## MUTCHALL v. CITY OF KALAMAZOO.

1. Constitutional Law—Police Power—Regulation of Liquor Traffic.

   The exercise of the police power with respect to the liquor traffic is proper since the results which follow from the use of intoxicating liquors often tend to disturb the public peace and frequently result injuriously to the health and morals of the partaker and to the safety and health of others.

---

References for Points in Headnotes

[1]  30 Am. Jur., Intoxicating Liquors, § 22.
[2]  30 Am. Jur., Intoxicating Liquors, § 34 *et seq.*
[3]  30 Am. Jur., Intoxicating Liquors, § 36.
[4–6]  30 Am. Jur., Intoxicating Liquors, § 37.
[7]  37 Am. Jur., Municipal Corporations, § 177.
[8]  12 Am. Jur., Constitutional Law, § 480; 37 Am. Jur., Municipal Corporations, § 158.
[9]  12 Am. Jur., Constitutional Law, § 470.
[10]  12 Am. Jur., Constitutional Law, § 471.
[11]  12 Am. Jur., Constitutional Law, § 483.
[12, 13]  12 Am. Jur., Constitutional Law, § 521.
[14, 15]  30 Am. Jur., Intoxicating Liquors, § 309.
[14, 15]  Validity of particular statutory provisions or other regulations as to inspection, entry, or search of places licensed for sale of intoxicating liquors. 116 A.L.R. 1098.
[16]  See 30 Am. Jur., Intoxicating Liquors, § 151.

2. INTOXICATING LIQUORS—CONTROL OF TRAFFIC—LOCAL COMMUNITIES—LIQUOR CONTROL COMMISSION.

The liquor business is such that local communities should be permitted to regulate the traffic within their own bounds in the proper exercise of their police powers subject to the larger control of the liquor control commission as to matters of which it is given exclusive power by the legislature.

3. MUNICIPAL CORPORATIONS—INTOXICATING LIQUORS—STATES.

An authorized municipal regulation is valid if it does not infringe on the State's plan to license and regulate the sale of intoxicating liquors (Const. 1908, art. 16, § 11, as amended in 1932; Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended).

4. SAME—ORDINANCES—INTOXICATING LIQUORS—BOTTLE CLUBS.

Municipal ordinance providing for inspection and regulation of so-called "bottle clubs," in which members congregate and consume their own legally-purchased liquors at place licensed to sell food, soft drinks and mixes and which provides mixing service and which are not presently regulated by the State liquor control commission, and which ordinance is not in conflict with any statute or regulation of the liquor control commission is not invalid merely because it in some way relates to the use of alcoholic beverages (Const. 1908, art. 16, § 11, as amended in 1932; Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended; Kalamazoo Ordinance No. 244).

5. SAME — BOTTLE CLUBS — RESTAURANTS — FOOD — SOFT DRINKS — MIXES.

So-called "bottle club," operated by plaintiff under the guise of a club in order to circumvent the liquor laws and in which soft drinks or mixes and food are sold as in the ordinary restaurant, not being a club within the designation of those regulated by the liquor control commission, since it is run for the profit of an individual, was properly the subject of regulation by home-rule city ordinance since such a city has the right to control the sale of soft drinks, mixes and food (Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended; Kalamazoo Ordinance No. 244).

6. SAME—POLICE POWER—BOTTLE CLUBS.

The business of operating a so-called "bottle club," wherein proprietor permits members to consume their own intoxicating liquor with food, soft drinks and mixes served by him and which is shown to make a large part of the profit during hours when regular taverns are required to be closed is a business that affects the general public welfare and is subject to the

broad police power given to home-rule cities (Kalamazoo Ordinance No. 244).

7. SAME—ORDINANCES—CONSTITUTIONALITY PRESUMED.
   The constitutionality of an ordinance of a home-rule city will be presumed unless fatal defects are shown.

8. CONSTITUTIONAL LAW—STATUTES—ORDINANCES—CLASSIFICATION.
   Classifications in a statute or ordinance are not discriminatory if based on any reasonable ground of distinction.

9. SAME—EQUAL PROTECTION.
   The equality of rights protected by the State Constitution is the same as that preserved by the Fourteenth Amendment to the Constitution of the United States.

10. SAME—POLICE POWER—EQUAL PROTECTION.
    The Fourteenth Amendment to the Constitution of the United States does not take from the State the power to classify in adoption of police powers, but admits of the exercise of a wide scope of discretion in that regard.

11. SAME—CLASSIFICATION—INEQUALITY.
    A classification in a statute or ordinance having some reasonable basis does not offend against the equal protection clause merely because it is not made with mathematical nicety or because in practice it results in some inequality.

12. SAME—CLASSIFICATION.
    When the classification in a statute enacted under the police power is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.

13. SAME—BURDEN OF SHOWING ARBITRARINESS OF CLASSIFICATION.
    One who assails the classification in a statute enacted under the police power must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.

14. MUNICIPAL CORPORATIONS—ORDINANCES—BOTTLE CLUBS—CLASSIFICATION.
    Home-rule city ordinance imposing a license fee upon so-called "bottle clubs" and providing for inspection of such clubs at all reasonable times and at intervals by duly-authorized city officers and exempting clubs run without profit and licensed by the State liquor control commission *held,* neither arbitrary nor unreasonable (Act No. 8, Pub. Acts 1933 [Ex. Sess.], as amended; Kalamazoo Ordinance No. 244).

15. SAME—ORDINANCES—BOTTLE CLUBS—POLICE POWER—INSPEC-
TION.

> Home-rule city ordinance regulating so-called "bottle clubs" which
> requires licensee to allow police to enter the premises at all
> hours and also to submit to a reasonable inspection by health
> and fire departments does not deprive licensee of a right to be
> free from unreasonable searches and seizures nor compel him
> to be a witness against himself in a criminal action since such
> inspections are necessary to a proper exercise of the police
> powers of the city (Kalamazoo Ordinance No. 244).

16. LICENSES—BOTTLE CLUBS—FEES.

> Application fee of $50 and annual fee of $500 for license to
> operate a so-called "bottle club" *held,* not excessive and not a
> means to raise revenue under the guise of regulation in view
> of the necessity for the many inspections and extra policing in
> order to avoid or suppress breaches of the peace (Kalamazoo
> Ordinance No. 244).

17. MUNICIPAL CORPORATIONS—REGULATION OF BOTTLE CLUBS.

> Operation of a "bottle club" where members could consume their
> own intoxicating liquor with food, soft drinks and mixers sup-
> plied by plaintiff club operator who conducted the place for
> profit, is not conducive to either the health, morals or peace
> of the city in which operated and should be strictly regulated
> in whatever manner conducted (Kalamazoo Ordinance No. 244).

18. COSTS—PUBLIC QUESTION—MUNICIPAL REGULATION OF BOTTLE
CLUBS.

> No costs allowed in suit to have ordinance regulating so-called
> "bottle clubs" declared void, a question of a public nature being
> presented for the first time (Kalamazoo Ordinance No. 244).

Appeal from Kalamazoo; Simpson (John), J.,
presiding. Submitted October 6, 1948. (Docket No.
26, Calendar No. 44,173.) Decided December 17,
1948.

Bill by Edward Mutchall against City of Kala-
mazoo and others to have ordinance declared void
and for an injunction. Decree for defendant on
motion to dismiss. Plaintiff appeals. Affirmed.

*James B. Stanley,* for plaintiff.

*Richard H. Paulson* (*Horace C. Tinker,* of counsel), for defendants.

BUTZEL, J.   Edward Mutchall, plaintiff, is the lessor of premises and buildings with part of its equipment and furniture in Kalamazoo, Michigan.   He has been conducting a so-called club or business on said premises under the trade name of F. & H. Club, which name he registered with the county clerk. He alleges that only members of the club are permitted to patronize and enjoy the facilities and accommodations thereof.   In the nature of an offer to those desiring to become members, he has filed in the club an instrument in writing signed by him and styled a "Declaration of Organization."   It provides that no intoxicating liquors shall be sold on the premises, but that club members shall be entitled and permitted to bring to the building on said premises lawful intoxicating liquors, that they have a lawful right to possess in this State.   He agrees to provide a suitable place within the premises for the safekeeping of such liquors and to designate in the proper manner the name of the club member to whom the liquors belong.   Each member under the declaration is entitled to the use and consumption of his own liquor so held on the premises for safekeeping in such manner as he desires, subject always to such reasonable charge for services and mix as may be determined by plaintiff and the board of control to be necessary and proper for the successful operation of the restaurant venture.   The approved price list for such service and mix shall be made available to the club members, and in the case of any extraordinary mixes or services, plaintiff shall make a reasonable charge commensurate with the usual charge established by him and the board of control. A further article in said declaration provides that plaintiff shall serve food and meals together with

nonintoxicating drinks to such club members in the quantity, taste and style as shall be in accordance with the "epicurean" fancies of the club members.

Plaintiff in his bill of complaint does not show how the so-called board of control is appointed, elected or removed. He alleges that he does furnish the building wherein the drinking of alcoholic liquors is indulged in by persons not the owners, lessees or licensees of said premises or by those who are not gratuitous guests of the plaintiff, and he alleges that the premises are not subject to the provisions of the Michigan liquor control act, but that plaintiff furnishes for consumption the foods and beverages and allows the drinking of alcoholic liquors by persons paying for such foods or beverages.

He further alleges that he has 145 members in good standing in the club. He further shows that from the hours of 2 a. m. to 9 a. m. on week days the gross sales of food, beverages and mixes which may be consumed with alcoholic beverages average $60, and the gross sales on Sundays from 2 a. m. until 12 midnight from the same sources average $50 each Sunday. He further alleges he allows the drinking of alcoholic liquors by persons paying for such food and beverages. Plaintiff runs what is commonly known as a "bottle club." He maintains that such business in no way is under the control of the State liquor commission, that he is immune from any statute or regulation of the State liquor commission as well as from the operations of the ordinance of the city of Kalamazoo, which is the subject of this lawsuit.

The city of Kalamazoo on March 8, 1948, adopted an ordinance to become effective on May 1, 1948, known as Ordinance No. 244, to regulate and license operations, premises and establishments commonly known as "bottle clubs" and similar organizations where alcoholic liquors and/or beverages are kept

and consumed by persons ostensibly the owners of such liquor and beverages. The ordinance sets forth the following findings and policy, and the constitutional provision by which the Michigan liquor control commission is vested with the control of the alcoholic beverage traffic within the State of Michigan, subject to legislative limitations. Act No. 8, Pub. Acts 1933 (Ex. Sess.), as amended (Comp. Laws Supp. 1940, 1945, § 9209–16 *et seq.*, Stat. Ann. and Stat. Ann. 1947 Cum. Supp. § 18.971 *et seq.*), creates the liquor control commission and limits its powers, but there are certain types of organizations which such commission does not assume to regulate with reference to alcoholic liquor. The ordinance states that there is no law or statute at the present time regulating the use of alcoholic liquor purchased by an unincorporated association or by persons who have made their own purchases of liquor and who congregate upon premises maintained for the express purpose of drinking alcoholic liquor which they own. It further states that the maintenance and operation of such premises for such purposes often gives rise to assaults, general delinquency and allied problems, and that inasmuch as such premises are commonly operated after the closing hours of taverns and other establishments selling alcoholic drinks, it creates an additional police problem; that it is the duty of police officers to repress, prevent crime and prosecute violations of Act No. 8, *supra,* where applicable to "bottle clubs" but the premises are not subject to the provisions of the Michigan liquor control act. The ordinance was adopted for the preservation of the public safety, health and morals and for the purpose of licensing and inspecting premises not under the jurisdiction of the Michigan liquor control commission. It provides that any person or persons maintaining premises, not subject to the liquor control commission, whereon

others may engage in the drinking of alcoholic liquor as defined in the ordinance, for a fee or other consideration, including the sale of food, mixes, ice, or any other fluids for alcoholic drinks, space for the storage of alcoholic liquors, et cetera, or otherwise furnish premises for such purposes and from which they would derive a revenue, shall procure a license from the city clerk of the city of Kalamazoo, under penalty for failure to do so of fine or imprisonment or both.

The ordinance provides the license fee shall be $500 per year less a preliminary fee of $50 for the costs of inspecting and investigation into the application, and in the event that it is disapproved, the retaining of such sum of $50. It further provides that the premises may be inspected at all reasonable times and at intervals by duly authorized representatives of the various departments of the city. It further prohibits licensee from permitting club members to consume alcoholic beverages at such "bottle clubs" between the hours of 2 a. m. and 12 midnight on any Sunday, or on any primary election day, general election day or municipal election day, until after the polls are closed. It further provides that no intoxicated persons shall be served or allowed to drink liquor on the premises so licensed, et cetera. It requires the filing of the names of all persons that such applicant allows upon the premises and who have a right to store or use liquor thereon.

The plaintiff attacks the validity of the ordinance and raises three questions, which we shall discuss.

Plaintiff claims that the city has no power to regulate the alcoholic beverage traffic. Under article 16, § 11, of the Constitution of this State (as amended in 1932), it is provided that the legislature may by law establish a liquor control commission, which, subject to statutory limitations, shall exercise com-

plete control over the alcoholic beverage traffic within this State. Under this granted power, the legislature in the first extra session of 1933 enacted Act No. 8, which in section 1 states:

"SEC. 1.   *   *   *   Except as by this act otherwise provided, the commission shall have the sole right, power and duty to control the alcoholic beverage traffic and traffic in other alcoholic liquor within the State of Michigan, including the manufacture, importation, possession, transportation, and sale thereof."

The act then lists the powers of the commission as to licensing and defines the terms used in the act. The act was amended so as to meet the objections raised in *Noey* v. *City of Saginaw*, 271 Mich. 595, so as to permit local authorities to control the closing time of licensed establishments.

In *Fuchs* v. *Common Council of Village of Grass Lake*, 166 Mich. 569, we held:

"The exercise of this police power is peculiarly and especially proper in respect to the liquor traffic, as the results which follow from the use of intoxicating liquors often tend to disturb the public peace, and frequently result injuriously to the health and morals of those who partake thereof, and to the safety and health of others."

In *Johnson* v. *Liquor Control Commission*, 266 Mich. 682, we stated:

"The very nature of the liquor business is such that local communities, as a matter of policy, should be permitted to regulate the traffic within their own bounds in the proper exercise of their police powers, subject to the larger control of the liquor commission as to those matters wherein the commission is given exclusive powers by the legislature."

In neither of these cases, however, was the same question raised as in the instant case. The question

has arisen in other States. In *Nelson* v. *State,* 157 Fla. 412 (26 South. [2d] 60), it was stated:

"An authorized municipal regulation that does not infringe on the State's plan to license and regulate the sale of intoxicating liquors should not be held bad, absent an express purpose to do so. This is especially true when, as here, the State plan does not touch the phase regulated and the city has power to enact it."

In *Klepak* v. *Humble Oil & Refining Co.* (Tex. Civ. App.), 177 S. W. (2d) 215, it was said:

"However, it is held that the legislature—in so delegating that authority to the railroad commission—did not thereby intend to nor accomplish the repeal of the fundamental law theretofore, as well as subsequently, existing, that municipalities in Texas have under the police power, authority to regulate the drilling for and production of oil and gas within their corporate limits, when acting for the protection of their citizens and the property within their limits, looking to the preservation of good government, peace, and order therein."

There is no conflict in the ordinance with any statute nor with the regulations of the liquor control commission. If there were, plaintiff would have a right to complain. See *National Amusement Co.* v. *Johnson,* 270 Mich. 613.

In *Scott* v. *Township Board of Arcada Township,* 268 Mich. 170, it was held (syllabus):

"The liquor business is such that local communities should be permitted to regulate the traffic within their own bounds in the proper exercise of their police powers subject to the larger control of the liquor control commission as to matters of which it is given exclusive power by the legislature."

The State undoubtedly has complete control over the liquor traffic which includes the sales, storing

and possession of alcoholic beverages, but does this preclude the city from its control over businesses or premises merely because it is in some way related to the use of alcoholic beverages which have been legally purchased by the consumers from the State?

In *Mallach* v. *City of Mt. Morris,* 287 Mich. 666, the issue was whether the city had power to regulate or prohibit dancing in establishments licensed to sell liquor by the State liquor control commission. This Court held the ordinance was valid and the fact that the commission also had rules regulating dancing in such places was not important for the power to control the liquor traffic did not deprive the city of its power to control dancing in public places. In the instant case plaintiff runs a restaurant and sells nonalcoholic beverages, which business the city has a right to regulate.

It is not, however, necessary here to pass upon whether the ordinance usurps or conflicts with the power of the State liquor control commission for the ordinance is not a regulation of possession of liquor by individuals for private use on private premises. It is the regulation by the city of a business operated by plaintiff under the guise of a club in order to circumvent the liquor laws and in which soft drinks or mixes and food are sold as in the ordinary restaurant, both of which businesses the city has a right to control. The so-called "bottle club" is not a club within the designation of those regulated by the liquor control commission for it is run for the profit of an individual, the fraternal or social benefits, if any, of the members being incidental. If plaintiff were operating a restaurant or selling soft drinks in which he permitted the patrons to drink their liquor, he would still be subject to city regulation in the sale of food and soft drinks. Plaintiff further shows that he makes a large part of his profit during the hours when regular taverns are

required to be closed. It is a business that affects the general public welfare, and is subject to the broad police power given to home-rule cities such as the city of Kalamazoo. See *Melconian* v. *City of Grand Rapids,* 218 Mich. 397; *People* v. *Litvin,* 312 Mich. 57.

The plaintiff is not engaged in the liquor traffic. There is no claim that the liquor has not passed legitimately into the hands of the owners who may consume it, but even if some of us may be of the opinion that the liquor commission still has some control, if it cared to exercise it, over its consumption by its owners who have legitimately purchased it, plaintiff certainly cannot complain when he is selling soft drinks and operating a restaurant and offering other facilities to be used in connection with the consumption of the liquor by its owners. The bill of complaint is somewhat anomalous. Plaintiff claims that his business does not come within the statutory definition of a club or within the regulations of the liquor commission and at the same time claims that the city has no right to regulate his business. Whichever way one may look at the question, a city nevertheless has the power to regulate restaurants, the selling of soft drinks and provide for the peace and welfare of its citizens. The very nature of plaintiff's business is such as to create a problem that comes within the police power of a home-rule city, and the ordinance is not defective. Its constitutionality will be presumed unless fatal defects are shown. We find none under the facts as presented in the bill of complaint.

Plaintiff, however, claims that the ordinance is discriminatory as it places "bottle clubs" in a special class exempting clubs run without profit and licensed by the liquor control commission. The general rule is that classifications in a statute or ordinance are not discriminatory if based on any reasonable

ground of distinction. In *Naudzius* v. *Lahr,* 253 Mich. 216 (74 A. L. R. 1189, 30 N. C. C. A. 179), in considering the question as to what was a reasonable classification in a statute, the Court said:

"The equality of rights protected by our Constitution is the same as that preserved by the Fourteenth Amendment to the Federal Constitution. *In re Fox's Estate,* 154 Mich. 5. The standards of classification are: '1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in adoption of police powers, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.' *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 78 (31 Sup. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160)."

Applying the rules thus stated, we find that the ordinance is neither arbitrary nor unreasonable.

Plaintiff further contends that the provisions of the ordinance permitting him to allow the police to enter the premises at all hours and also submit to a reasonable inspection by health and fire departments deprives him of the right to be free from unreasonable searches and seizures, and that he may thus be compelled to be a witness against himself in a criminal action. In *People* v. *Harley,* 230 Mich. 676, the Court upheld an ordinance licensing public

lodging houses, which also provided that the chief of police, police officers, health officers and others charged with enforcement of the ordinance should have access to all parts of the premises licensed. The Court held it did not violate the section of the Constitution prohibiting unreasonable searches and seizures as it was necessary to the proper enforcement of the statute which was a proper exercise of the police powers of the city. Also, see *Robison* v. *Haug,* 71 Mich. 38; *People* v. *Henwood,* 123 Mich. 317; *People* v. *Shuler,* 136 Mich. 161, in all of which we held that statutes, and this applies also to ordinances, requiring inspections and reports, do not violate the Fourteenth Amendment of the Federal Constitution by depriving one of the valuable right to use his premises in a lawful manner without due process of law.

Plaintiff further claims that the demanding of a fee of $50 for looking into an application, the non-return of this fee if application is rejected, and the application of the fee on the license fee if the application is granted, is excessive. Further that the license fee of $500 is exorbitant, and is used as a means for the city to raise money for general purposes and is taxation under guise of regulation. The ordinance itself shows the necessity of extra policing in order to avoid or suppress breaches of the peace. We believe that the fees are commensurate with the extra duties and burdens imposed on the city. See *People* v. *Riksen,* 284 Mich. 284 (116 A. L. R. 116). There is not only the original inspection but many other inspections if the application is granted and the license issued. The ordinance itself shows that plaintiff is undertaking to run a business for profit that is not conducive to either the health, morals or peace of the city. It is the type of business that should be strictly regulated in whatever manner it is conducted.

The trial judge upheld the validity of the ordinance. His decree is affirmed, but without costs as a question of a public nature is presented for the first time.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, and CARR, JJ., concurred.