[Civ. No. 37107. Second Dist., Div. Three. Feb. 24, 1971.]

CRISTMAT, INC., et al., Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

## COUNSEL

Marks, Sherman & London, Marks, Sherman, London, Schwartz & Levenberg, Robert London and Burton Marks for Plaintiffs and Appellants.

John D. Maharg, County Counsel, and Edward H. Gaylord, Assistant County Counsel, for Defendants and Respondents.

## OPINION

SCHWEITZER, J.—This case presents the question of the constitutionality of section 2648 of Los Angeles County Ordinance No. 5860. Ordinance No. 5860 provides for the licensing of model studios and specifies certain conditions under which such studios must operate. A model studio is described generally as an establishment that provides human models, often nude, for professional and amateur photographers. For an admission fee the photographer is allowed to take pictures of a professional model in a room provided for that purpose.

Section 2648 provides: "A person shall not enter, be or remain in any part of a model studio or premises licensed as such while in the possession or [sic], consuming, using, or under the influence of, any alcoholic beverage or drugs. The licensee shall not permit any such person to enter or remain upon the licensed premises." The ordinance provides that a violation of any section thereof is a misdemeanor.

Plaintiffs filed a complaint for declaratory and injunctive relief, alleging that they owned and operated a cocktail lounge, known as "PUSS AND BOOTS," licensed by the state, and also licensed by the county to operate a model studio on the same premises "for the entertainment, amusement, and/or education of the patrons of the 'PUSS AND BOOTS' and members of the adult public in general." They further alleged that section 2648 has been and apparently will continue to be applied against plaintiffs by defendant sheriff who has on several occasions issued citations against and taken into

custody employees of the model studio. Plaintiffs asked in their complaint that section 2648 be declared unconstitutional and that the county be enjoined from enforcing the ordinance.

After filing an answer defendants moved for judgment on the pleadings. Plaintiffs moved for a preliminary injunction. The two motions were heard together. The motion for preliminary injunction was denied; the motion for judgment on the pleadings was granted, the court ruling that the complaint did not state facts sufficient to constitute a cause of action, thus in effect holding that section 2648, both on its face and as applied to plaintiffs, was constitutional.

Plaintiffs appeal from the judgment thereafter entered and on appeal raise the following questions:

(1) Is section 2648 invalid because it is in conflict with, or operates in an area preempted by state law?

(2) Does section 2648 deprive plaintiffs of the equal protection of the laws?

(3) Will the continued enforcement of section 2648 deprive plaintiffs, other model studio owners, and the public of the right to provide and view a form of expression protected by the First Amendment to the United States Constitution?

### Preemption by State

█ *Express Preemption.* Article XX, section 22 of the California Constitution provides in part: "The State of California . . . shall have the *exclusive right and power to license and regulate the manufacture, sale, purchase, possession and transportation of alcoholic beverages within the State.*" (Italics added.) Plaintiffs argue that this constitutional provision constitutes a pronouncement that the sale, use and possession of alcoholic beverages is exclusively a matter of state concern and that the state will not tolerate local action with respect thereto. (*In re Hubbard*, 62 Cal.2d 119, 123 [41 Cal. Rptr. 393, 396 P.2d 809].)

Although we agree generally with this contention, it has no application to this case. Section 2648 does not attempt to invade the exclusive power given to the state by article XX, section 22 of the Constitution to license, regulate or prohibit the manufacture, sale, purchase, possession or transportation of alcoholic beverages; it merely prohibits certain persons from entering or remaining in a model studio and prohibits the model studio licensee from permitting any such person to enter or remain in the model studio.

■ As stated in *Daniel* v. *Board of Police Commissioners,* 190 Cal.App.2d 566, 571 [12 Cal.Rptr. 226]: "It does not appear that the Legislature intended that a person who is licensed to sell liquor should be immune from supervision, by local government, of any other activity the licensee might pursue in conjunction with the sale of liquor."

■ The legal effect of municipal police regulations on liquor licensees has been the subject of several opinions of the Attorney General since the adoption of article XX, section 22 of the California Constitution. Opinion No. 10601, dated April 4, 1936, states in part: "In these opinions it was pointed out that a municipality, under Article XX, section 22 of the State Constitution, had no power to control, regulate, license or tax the traffic in intoxicating liquors, either directly or indirectly. [¶] But it cannot be doubted that a municipality has the power, under its police power, to regulate places of public entertainment. It would appear that a municipal ordinance prohibiting floor shows and orchestras from the premises of liquor licensees would fall within this legitimate scope of the police power of the municipality. Such regulation is not designed to control the traffic in intoxicating liquors but is for the purpose of regulating places of public entertainment." (See also Opinion of Attorney General, No. N.S. 1449, dated February 16, 1939, approving and reaffirming the foregoing opinion.)

■ Opinions of the Attorney General are entitled to great weight as an administrative construction of a statute. (*Stribling's Nurseries, Inc.* v. *County of Merced,* 232 Cal.App.2d 759, 763 [43 Cal.Rptr. 211]; *Meyer* v. *Board of Trustees,* 195 Cal.App.2d 420, 432 [15 Cal.Rptr. 717].) "It must be presumed that the aforesaid interpretation [of the Attorney General] has come to the attention of the Legislature, and if it were contrary to the legislative intent that some corrective measure would have been adopted in the course of the many enactments on the subject in the meantime." (*Meyer* v. *Board of Trustees, supra,* 195 Cal.App.2d 420, 432; see also *Southwest Explor. Co.* v. *County of Orange,* 44 Cal.2d 549, 554 [283 P.2d 257].)

■ Article XX, section 22 of the Constitution has been amended twice since the date of the two cited opinions of the Attorney General. A 1954 amendment made no change in the language under discussion. A 1956 amendment substituted the words "alcoholic beverages" for the words "intoxicating liquors." Under these circumstances it is reasonable to conclude that the Attorney General's opinions correctly interpreted the intent of the Legislature and that such intent remains unchanged.

In states where the regulation of alcoholic .beverages has been placed exclusively with state authorities, we find decisions in accord with the foregoing. Thus in *Commonwealth* v. *Baronas,* 285 Mass. 321 [189 N.E. 62],

it is stated at page 63: "The defendant contends that this by-law attempts to legislate with reference to intoxicating liquor and imposes a penalty for mere possession of such liquor, so that it is clearly repugnant to the law. He misapprehends the scope and application of the by-law. It does not deal with intoxicating liquor or seek to control its keeping or sale. It deals with the maintenance of the peace and good order in Lunenburg. . . . The defendant here is fined, not merely for having intoxicating liquor in his possession, but because, although lawfully in possession of it, he, unlawfully, had it in his possession in a public place where its presence might well lead to disorder and from which anyone possessing it was barred by a reasonable by-law. . . ."

Somewhat similar facts were presented and the same conclusion was reached in *Mallach* v. *City of Mt. Morris*, 287 Mich. 666 [284 N.W. 600, 601] (ordinance prohibiting dancing in bar upheld), *Mutchall* v. *City of Kalamazoo*, 323 Mich. 215 [35 N.W.2d 245, 249] (ordinance regulating bottle clubs held valid), and *City of Coos Bay* v. *Aerie No. 538*, 179 Ore. 83 [170 P.2d 389, 397] (city tax on certain businesses conducted in conjunction with licensed liquor establishments upheld).

We conclude that plaintiffs' first contention is without merit, that article XX, section 22 of the Constitution does not deprive the county of a right under its police power, to regulate model studios operated in conjunction with a state-licensed cocktail bar.

■ *Implied Preemption.* Plaintiffs point to the numerous California statutes dealing with alcoholic beverages as further evidence of the state's intent to fully, completely and exclusively regulate the sale, use and possession of alcoholic beverages, and argue that if there be any doubt about preemption, "the doubt must be resolved in favor of the legislative authority of the state." (*Abbott* v. *City of Los Angeles*, 53 Cal.2d 674, 681 [3 Cal.Rptr. 158, 349 P.2d 974].) They rely on *In re Lane*, 58 Cal.2d 99, 103 [22 Cal.Rptr. 857, 372 P.2d 897]: "The Penal Code sections covering the criminal aspects of sexual activity are so extensive in their scope that they clearly show an intention by the Legislature to adopt a general scheme for the regulation of this subject."

The Supreme Court analyzed this contention in *Galvan* v. *Superior Court*, 70 Cal.2d 851, 861 [76 Cal.Rptr. 642, 452 P.2d 930]: "The fact that there are numerous statutes dealing with [the subject of use and consumption of intoxicating liquors, and of intoxicated persons] does not by itself show that [these subjects have] been completely covered so as to make the matter one of exclusive state concern. [¶] To approach the issue of preemption as a quantitative problem provides no guidance in determining whether the

Legislature intends that local units shall not legislate concerning a particular subject, and further confounds a meaningful solution to preemption problems by offering a superficially attractive rule of preemption that requires only a statutory nose-count. . . . Language in *In re Lane, supra,* 58 Cal.2d 99, 110 (concurring opinion), that 'the general intent may be found in a multiplicity of statutes taken together' of course presupposed closely related statutes. [¶] The task is, as shown in *Hubbard* [62 Cal.2d 119], to determine whether the state has occupied a relevant field—an area of legislation which includes the subject of the local legislation, and is sufficiently logically related so that a court, or a local legislative body, can detect a patterned approach to the subject. [¶] In *In re Hubbard, supra,* 62 Cal.2d 119, 125-126, we recognized that the Legislature had preempted some areas of gambling . . . but we held that the Legislature had preempted neither all gambling, or more specifically, regulation of all games of chance. [¶] The second standard set forth in *Hubbard* contemplates that the Legislature may preempt a field even though the statutes are not so comprehensive as to indicate an intent to occupy the field if there has been partial coverage of the field by general law couched in such terms as to indicate that there is a paramount state concern which will not tolerate further or additional local requirements. . . . [¶] The issue of 'paramount state concern' also involves the question 'whether substantial, geographic, economic, ecological or other distinctions are persuasive of the need for local control, and whether local needs have been adequately recognized and comprehensively dealt with at the state level.' . . . [¶] The third standard presented in *Hubbard* is whether the subject matter has been partially covered by general law, and the 'adverse effect of a local ordinance . . . outweighs the possible benefit to the municipality.' (62 Cal.2d at p. 128; see also *In re Lane, supra,* 58 Cal.2d at p. 111 (concurring opinion).)"

Applying the principles of *Galvan* to the instant case, we conclude that there is no merit to plaintiffs' contention that section 2648 is invalid as a result of the implied preemption by the state of such activity. (See *People v. Butler,* 252 Cal.App.2d Supp. 1053, 1055-1056 [59 Cal.Rptr. 924].)

We find additional support for our opinion in sections 318.5 and 318.6 of the Penal Code,[1] enacted in 1969, and the interpretation recently placed thereon in *People* v. *Lindenbaum,* 11 Cal.App.3d Supp. 1, 4 [90 Cal.Rptr.

---

[1]Penal Code, section 318.5: "Nothing in this code shall invalidate an ordinance of, or be construed to prohibit the adoption of an ordinance by, a county or city, if such ordinance directly regulates the exposure of the genitals or buttocks of or the breasts of any person who acts as a waiter, waitress, or entertainer, whether or not the owner of the establishment in which the activity is performed employs or pays any compensation to such person to perform such activity, in an establishment which serves

340], where the court noted that these two Penal Code sections are "expressions of the Legislature's intent to dissipate in some measure the effect of the ruling in *In re Lane* [58 Cal.2d 99]. The Legislature has now said, effective November 10, 1969, *In re Lane* is no longer effective as to the Legislative intent to preempt the entire field of control of sexual activity in public places; it is now our intent to permit counties and cities throughout the state to legislate in the field of 'topless' and 'bottomless' in their respective territorial areas—except in theaters and concert halls. These Penal Code sections permit the city to adopt this type of ordinance free from the restraint of preemption."

### Equal Protection of the Laws

Plaintiffs contend that the ordinance denies them equal protection and due process, as guaranteed by the Fourteenth Amendment to the United States Constitution, arguing that it arbitrarily discriminates against a class of persons who are in possession of, or who are consuming, using or are under the influence of any alcoholic beverage, from attending a model studio; and that there is no rational basis in exercise of the police power to permit nondrinking, sober persons to enter or remain in a model studio, and to prohibit drinking or intoxicated persons from so attending.

At the outset we observe that since the judgment entered herein resulted from a motion for judgment on the pleadings, which is used to perform the function of a general demurrer, our consideration of the facts alleged "reaches only to the contents of the pleading and such matters as may be considered under the doctrine of judicial notice" (*Weil* v. *Barthel,* 45 Cal.2d 835, 837 [291 P.2d 30]), with certain exceptions not indicated here. (See *De Gonia* v. *Building Material etc. Union,* 155 Cal.App.2d 573, 577 [318 P.2d 486].) The record is devoid of any facts pertaining to the manner in which plaintiffs conducted the model studio.

Simply stated the question is whether there is a reasonable basis for a classification which permits abstaining, sober, persons to attend model

---

food, beverages, or food and beverages, including, but not limited to, alcoholic beverages, for consumption on the premises of such establishment.

"The provisions of this section shall not apply to a theater, concert hall, or similar establishment which is primarily devoted to theatrical performances. . . ."

Penal Code, section 318.6: "Nothing in this code shall invalidate an ordinance of, or be construed to prohibit the adoption of an ordinance by, a city or county, if such ordinance relates to any live acts, demonstrations, or exhibitions which occur in public places, places open to the public, or places open to public view and involve the exposure of the private parts or buttocks of any participant or the breasts of any female participant, and if such ordinance prohibits an act or acts which are not expressly authorized or prohibited by this code.

"The provisions of this section shall not apply to a theater, concert hall, or similar establishment which is primarily devoted to theatrical performances."

studios, and prohibits intoxicated, nonabstaining persons from doing so. ██ When the purpose of a legislative classification is assailed, "if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts is presumed, and one who assails the classification must carry the burden of showing that it is arbitrary." (*LeLande* v. *Lowery,* 26 Cal.2d 224, 232 [157 P.2d 639]; see also *Whittaker* v. *Superior Court,* 68 Cal.2d 357, 368 [66 Cal.Rptr. 710, 438 P.2d 358]; *Francis* v. *County of Stanislaus,* 249 Cal.App.2d 862, 871 [57 Cal.Rptr. 881].)

It is not our office here to conjure up a plausible or conceivable reason to justify the conclusion that the ordinance had a reasonable relation to the protection of the public health, safety, morals or general welfare of the public. ██ The courts take judicial knowledge of the effect on human beings of the consumption of alcoholic beverages (*Dobson* v. *Industrial Acc. Com.,* 114 Cal.App.2d 782, 786 [251 P.2d 349]; *Dobson* v. *Dobson,* 86 Cal.App.2d 13, 14-15 [193 P.2d 794]), and it is common knowledge that the drinking of alcoholic beverages "ordinarily loosens the normal inhibitions and restraints." (*State* v. *Rand,* 238 Iowa 250 [25 N.W.2d 800, 811, 170 A.L.R. 289, 304].)

██ "It is established that a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, and that the existence of that state of facts at the time the law was enacted must be assumed." (*Rast* v. *Van Deman & Lewis Co.,* 240 U.S. 342, 357 [60 L.Ed. 679, 687, 36 S.Ct. 370].)

██ Here the county could well have concluded that in many model studios the model would often be nude and in a room with one or more male customers and no one else; that she would assume many provocative poses; that the inhibitions of the customers would be loosened by alcohol; and that the effect would be to " 'substantially increase the work load upon the police department' and provide greater opportunity for lewd conduct thereby adversely affecting the general welfare." (*People* v. *Lindenbaum,* *supra,* 11 Cal.App.3d Supp. 1, 6.) This possibility clearly presents a rational basis for more extensive control and supervision than would be presented by a performance by a nude entertainer or model before customers in a licensed bar. The case is thus distinguishable from *In re Giannini,* 69 Cal.2d 563 [72 Cal.Rptr. 655, 446 P.2d 535], relied on by plaintiffs.

We hold that the classification is not unreasonable, and that it does not deny plaintiffs equal protection of the laws.

*Freedom of Expression*

Plaintiffs rely on *In re Giannini, supra,* 69 Cal.2d 563, 567, in which it was held that a dance by a person in the nude, in the absence of obscene gestures, is protected by the First Amendment as being a form of free expression, and argue that this principle is controlling in the instant case. We disagree.

*Burton* v. *Municipal Court,* 68 Cal.2d 684, 687 [68 Cal.Rptr. 721, 441 P.2d 281], involved the validity of an ordinance which permitted a board to deny a permit to show motion pictures if it found that the operation will not comport "with the peace, health, safety, convenience, good morals, and general welfare of the public," or if the applicant is "unfit to be trusted with the privileges granted by such permit, or has a bad moral character, intemperate habits or a bad reputation for truth, honesty or integrity." Although the Supreme Court held the ordinance to be unconstitutional as being too broad and fraught with the hazard that rights of free speech would be denied, the court stated at pages 689-690: "A municipality may impose reasonable regulations upon the conduct of an economic enterprise [citations]. . . . That First Amendment rights are being utilized on the premises does not exempt a commercial entrepreneur from compliance with reasonable regulations under the police power."

This principle is reiterated in *Robins* v. *County of Los Angeles,* 248 Cal.App.2d 1, 11 [56 Cal.Rptr. 853]: "Free speech is not impaired when . . . a radio station is denied a license and its operations interrupted for its failure to observe regulations promulgated in the public interest. [Citation.] [¶] We find herein no interference with free speech or freedom of expression since it is the commercial aspects of a business enterprise with which we are herein concerned. [Citations.] Free speech may be protectible even where it is published in a paid advertisement [citation], but not where the content of the expression is directly related to a commercial activity. [Citations.]"

We conclude that section 2648 of the Los Angeles County Ordinance No. 5860 constitutes a reasonable police regulation of a commercial activity, that it does not regulate the manufacture, sale, purchase, possession or transportation of alcoholic beverages, that the subject thereof has not been preempted by the state, and that it does not violate any constitutional rights guaranteed the plaintiffs.

Judgment affirmed.

Cobey, Acting P. J., and Allport, J., concurred.

A petition for a rehearing was denied March 11, 1971, and appellants' petition for a hearing by the Supreme Court was denied April 22, 1971.